## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

JEWELTEX MANUFACTURING INC. RETIREMENT PLAN, On Behalf of Itself and All Others Similarly Situated,

      Plaintiff,

v.

DIGITALGLOBE, INC.,
JEFFREY R. TARR,
HOWELL M. ESTES, III,
KIMBERLY TILL,
EDDY ZERVIGON,
ROXANNE J. DECYK,
LAWRENCE A. HOUGH,
WARREN C. JENSON,
NICK S. CYPRUS, and
L. ROGER MASON, JR.

      Defendants.

---

## CLASS ACTION COMPLAINT AND JURY DEMAND

---

Plaintiff Jeweltex Manufacturing Inc. Retirement Plan ("Plaintiff"), by and through its undersigned counsel, for its complaint against defendants, alleges upon personal knowledge with respect to itself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.    Plaintiff brings this class action on behalf of the public stockholders of DigitalGlobe, Inc. ("DigitalGlobe" or the "Company") against DigitalGlobe and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a),

and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which the Company will be acquired by MacDonald, Dettwiler and Associates Ltd. ("MDA"), through its wholly-owned subsidiaries SSL MDA Holdings, Inc. ("Holdings") and Merlin Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On February 24, 2017, DigitalGlobe and MDA issued a joint press release announcing they had entered into an Agreement and Plan of Merger (the "Merger Agreement") to sell the Company to MDA.  Pursuant to the Merger Agreement, DigitalGlobe stockholders will receive 0.3132 of an MDA common share and $17.50 in cash for each share of DigitalGlobe common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $3.6 billion.

3.      On April 27, 2017, MDA filed a Registration Statement on Form F-4 containing a proxy statement/prospectus (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.  The Proxy Statement, which recommends that DigitalGlobe stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) DigitalGlobe's and MDA's management projections, utilized by the Company's financial advisors, PJT Partners LP ("PJT Partners") and Barclays Capital Inc. ("Barclays") in their financial analyses; (ii) the valuation analyses prepared by PJT Partners and Barclays in connection with the rendering of their fairness opinions; (iii) DigitalGlobe insiders' potential conflicts of interest; and (iv) PJT Partners' and Barclays' potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as DigitalGlobe stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4.      In short, unless remedied, DigitalGlobe's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. DigitalGlobe is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of DigitalGlobe.

9.      Defendant DigitalGlobe is a Delaware corporation with its principal executive offices located at 1300 West 120th Avenue, Westminster, Colorado 80234.  The Company is a leading global provider of high-resolution Earth imagery, data and analysis.  DigitalGlobe's common stock is traded on the New York Stock Exchange under the ticker symbol "DGI."

10.     Defendant Jeffrey R. Tarr ("Tarr") has been President, Chief Executive Officer ("CEO") and a director of the Company since April 2011.

11.     Defendant Howell M. Estes, III ("Estes") has been Chairman of the Board since 2011 and a director of the Company since 2007.

12.     Defendant Kimberly Till ("Till") has been a director of the Company since 2010.

13.     Defendant Eddy Zervigon ("Zervigon") has been a director of the Company since 2014 and was previously a director from 2004-2013.

14.     Defendant Roxanne J. Decyk ("Decyk") has been a director of the Company since 2014.

15.     Defendant Lawrence A. Hough ("Hough") has been a director of the Company since 2013.

16.     Defendant Warren C. Jenson ("Jenson") has been a director of the Company since 2008.

17.     Defendant Nick S. Cyprus ("Cyprus") has been a director of the Company since 2009.

18.     Defendant L. Roger Mason, Jr. ("Mason") has been a director of the Company since 2015.

19.     Defendants Tarr, Estes, Till, Zervigon, Decyk, Hough, Jenson, Cyprus and Mason are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

20.    MDA is incorporated in British Columbia, Canada.    MDA is a global communications and information company that provides operational solutions to commercial and government organization worldwide.

21.    Holdings is a Delaware corporation and wholly owned subsidiary of MDA.

22.    Merger Sub is a Delaware corporation and wholly owned subsidiary of Holdings.

**CLASS ACTION ALLEGATIONS**

23.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own DigitalGlobe common stock (the "Class").    Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

24.    Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

25.    The Class is so numerous that joinder of all members is impracticable.    While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.    As of April 21, 2017, there were approximately 62,029,254 shares of DigitalGlobe common stock issued and outstanding.    All members of the Class may be identified from records maintained by DigitalGlobe or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

26.    Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)      Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)      Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)      Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

27.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

28.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

29.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Company Background and its Poise for Growth

30.     DigitalGlobe is a global provider of high-resolution Earth imagery, data and analysis.  The Company's imagery solutions and other services are sourced from its own satellite constellation as well as third-party providers, which provide customers with critical information about the planet.  Other uses for DigitalGlobe's solutions and services include mission-planning, mapping and analysis, environmental monitoring, oil and gas exploration and infrastructure management.

31.     The Company's long-term business strategy is to grow its core satellite imagery

products and services, while investing for growth in its multi-source analytics Platform business, which enables a wide array of customers to extract insight from DigitalGlobe's imagery.

32.    On February 24, 2017, the Company issued a press release reporting strong financial results for the fourth quarter and full year 2016, having exceeded its 2016 guidance range.  For the year, DigitalGlobe grew net income 13.7% to $26.5 million compared to $23.3 million in 2015 and adjusted EBITDA increased 7.6% to $382.7 million, compared to $355.7 million in 2015.  Commenting on the financial results, defendant Tarr noted:

> We wrapped up a solid year on a high note with our successful launch of WorldView-4 and the completion of the Radiant Group transaction. . . . Our improved results reflect solid execution against our strategy for shareowner value creation and position us well for 2017. We look forward to continued profitable growth as we expand our International Defense and Intelligence business with assured access to our newest high resolution satellite, develop new commercial use cases, expand our rapidly growing geospatial big data analytics platform, and realize the full potential of our services business with the addition of Radiant.

**Insiders' Interests in the Proposed Transaction**

33.    MDA and DigitalGlobe insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will receive unique benefits in connection with the Proposed Transaction not available to Plaintiff and the other public stockholders of DigitalGlobe.

34.    Notably, according to the Proxy Statement, defendants Estes, Mason and Cyprus have secured positions on the board of directors of the combined company, subject to approval of MDA's Governance and Nominating Committee.

35.    In addition, if they are terminated in connection with the Proposed Transaction, DigitalGlobe's named executive officers stand to receive substantial severance benefits in the form of golden parachute compensation, as summarized in the following table:

| Named Executive Officer | Cash ($) (1) | Equity ($) (2) | Perquisites/ Benefits (3) | Tax Reimbursement (4) | Total (5) |
| --- | --- | --- | --- | --- | --- |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Jeffrey R. Tarr | $ | 3,378,750 | $ | 13,791,428 | $ | 36,096 | — | $ | 17,206,274 |
| Gary W. Ferrera | $ | 1,581,000 | $ | 5,328,582 | $ | 18,048 | — | $ | 6,927,630 |
| Walter S. Scott | $ | 1,377,000 | $ | 4,076,278 | $ | 19,320 | — | $ | 5,472,598 |
| Timothy M. Hascall | $ | 1,394,000 | $ | 4,808,580 | $ | 18,048 | — | $ | 6,220,628 |
| Daniel L. Jablonsky | $ | 960,000 | $ | 3,898,091 | $ | 19,320 | — | $ | 4,877,411 |

### The Proxy Statement Contains Material Misstatements and/or Omissions

36.     Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to DigitalGlobe's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting decision on the Proposed Transaction.

***Materially Incomplete and Misleading Disclosures Concerning the Company's and MDA's Financial Projections***

37.     The Proxy Statement does not disclose the following information concerning DigitalGlobe management's financial projections: (i) interest; (ii) tax expense; (iii) depreciation and amortization; (iv) changes in net working capital; (v) deferred contract costs and other operating activities (vi) other cash flow and deferred items; (vii) the net operating loss projections included in the "Scenario 2," and "Scenario 3" projections; and (viii) a reconciliation of all non-GAAP to GAAP metrics for years 2018 through 2021.

38.     The Proxy Statement does not disclose the following information concerning MDA's financial projections: (i) interest; (ii) tax expense; (iii) depreciation and amortization; (iv) enterprise improvement costs; (v) foreign exchange loss; (vi) executive termination settlement costs; (vii) income tax expenses; (viii) changes in working capital; and (ix) other cash flow and deferred items; and (x) a reconciliation of all non-GAAP to GAAP metrics for years 2017 through 2021.

39.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows

stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

40.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following section of the Proxy Statement: (i) "Certain Unaudited Prospective Financial Information Used by the DigitalGlobe Board and DigitalGlobe's Financial Advisors."

***Materially Incomplete and Misleading Disclosures Concerning the Financial Analyses Performed by PJT Partners***

41.     The Proxy Statement contains PJT Partners' written fairness opinion, and describes the various valuation analyses PJT Partners performed in support of its opinion. However, the description of PJT Partners' opinion and analyses fails to include key inputs and assumptions underlying the analyses.   Without this information, as described below, DigitalGlobe's public stockholders are unable to fully understand the analyses and, thus, are unable to determine what weight, if any, to place on its fairness opinion rendered in support of the Proposed Transaction.

42.     With respect to PJT Partners' *Discounted Cash Flow Analysis* for DigitalGlobe, the Proxy Statement fails to disclose: (i) the ranges of terminal values of DigitalGlobe as of December 31, 2021; and (ii) PJT Partners' basis for applying perpetuity growth rates of 1.5% to 2.5%.

43.     With respect to PJT Partners' *Discounted Cash Flow Analysis* for MDA, the Proxy Statement fails to disclose: (i) the ranges of terminal values of MDA as of December 31, 2021; and (ii) the estimated net debt as of December 31, 2016.

44.     With respect to PJT Partners' *Discounted Equity Value Analysis* for DigitalGlobe, the Proxy Statement fails to disclose: (i) the estimated net debt as of December 31, 2020; and (ii)

the fully diluted number of shares of DigitalGlobe common stock estimated to be outstanding as of December 31, 2020.

45.     With respect to PJT Partners' *Discounted Equity Value Analysis* for MDA, the Proxy Statement fails to disclose: (i) the estimated net debt; and (ii) the fully diluted number of shares of MDA common shares estimated to be outstanding as of December 31, 2020.

46.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Opinions of DigitalGlobe's Financial Advisors"; and (ii) "Certain Unaudited Prospective Financial Information Used by the DigitalGlobe Board and DigitalGlobe's Financial Advisors."

***Materially Incomplete and Misleading Disclosures Concerning the Financial Analyses Performed by Barclays***

47.     The Proxy Statement contains Barclays' written fairness opinion, and describes the various valuation analyses Barclays performed in support of its opinion.  However, the description of Barclays' opinion and analyses fails to include key inputs and assumptions underlying the analyses.  Without this information, as described below, DigitalGlobe's public stockholders are unable to fully understand the analyses and, thus, are unable to determine what weight, if any, to place on its fairness opinion rendered in support of the Proposed Transaction.

48.     With respect to Barclays' *Discounted Cash Flow Analysis* for DigitalGlobe, the Proxy Statement fails to disclose: (i) the ranges of terminal values of DigitalGlobe as of December 31, 2021; (ii) Barclays' basis for applying perpetuity growth rates of 1.5% to 2.5%; and (iii) the estimated net debt as of December 31, 2016.

49.     With respect to Barclays' *Discounted Cash Flow Analysis* for MDA, the Proxy Statement fails to disclose: (i) the ranges of terminal values of MDA as of December 31, 2021; and (ii) the estimated net debt as of December 31, 2016.

50.    The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Opinions of DigitalGlobe's Financial Advisors"; and (ii) "Certain Unaudited Prospective Financial Information Used by the DigitalGlobe Board and DigitalGlobe's Financial Advisors."

**Materially Incomplete and Misleading Disclosures Concerning DigitalGlobe Insider's Potential Conflicts of Interest**

51.    The Proxy Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

52.    Specifically, the Proxy Statement fails to disclose the timing and nature of all communications regarding future directorship and/or employment of DigitalGlobe's directors and officers, including who participated in all such communications, including the communications relating to defendants Estes', Mason's, and Cyprus's future board and committee positions.

53.    Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to DigitalGlobe stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

54.    The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "DigitalGlobe's Reasons for the Merger; Recommendation of the DigitalGlobe Board of Directors"; and (iii) "Interests of DigitalGlobe's Directors and Executive Officers in the Merger."

**Materially Incomplete and Misleading Disclosures Concerning PJT Partners' and Barclays'**

*Potential Conflicts of Interest*

55.     The Proxy Statement sets forth:

In the ordinary course of its and its affiliates' businesses, PJT Partners and its affiliates may provide investment banking and other financial services to DigitalGlobe, MDA and their respective affiliates and may receive compensation for the rendering of these services. Specifically, since its formation on October 1, 2015, PJT Partners advised DigitalGlobe in connection with a possible acquisition that was ultimately not consummated. PJT Partners did not receive any compensation, and no engagement letter was executed, in connection with such transaction.

Barclays has performed the following investment banking and financial services for DigitalGlobe: Lead Arranger and Bookrunner on DigitalGlobe's 2016 Secured Credit Facility and Sole Dealer Manager and Solicitation Agent on the associated tender offer. Barclays may perform various investment banking services for MDA in the future and would expect to receive customary fees for such services.

56.     The Proxy Statement fails, however, to disclose: (i) whether PJT Partners has previously provided services to MDA and/or its affiliates, and the amount of compensation received for such services; (ii) the amount of compensation received by Barclays for the past services it provided to DigitalGlobe; and (iii) whether Barclays has previously provided services to MDA and/or its affiliates, and the amount of compensation received for such services.

57.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

58.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to DigitalGlobe's stockholders. Defendants' failure to provide DigitalGlobe stockholders with the foregoing material information renders the statements in the Proxy Statement false and/or materially misleading and constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9 promulgated thereunder. The Individual Defendants were aware of their duty to disclose this information and acted

negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

59.    Plaintiff repeats all previous allegations as if set forth in full.

60.    During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

61.    By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the sales process for the Company, the financial analyses performed by the Company's financial advisors, and the actual intrinsic standalone value of the Company.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

62.    The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote

on the Proposed Transaction. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to stockholders.

63.    By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

64.    Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

65.    Plaintiff repeats all previous allegations as if set forth in full.

66.    The Individual Defendants acted as controlling persons of DigitalGlobe within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of DigitalGlobe and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

67.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

68.    In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

69.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

70.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

71.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in its favor on behalf of DigitalGlobe, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction

and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to DigitalGlobe stockholders;

      C.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

      D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

      E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: May 8, 2017

Respectfully submitted,

/s/ *Richard A. Acocelli*
_____
Richard A. Acocelli
**WEISSLAW LLP**
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*